# IN THE UNITED STATES DISTRICT COURT IN AND FOR THE WESTERN DISTRICT OF OKLAHOMA

Friends of Friends, Inc.; Gone Country, LLC,   )
d/b/a Cowboy Ranch; East California Corp.,   )
d/b/a Michael Murphy's Piano Bar;   )
Pink Parrot Cantina, LLC, d/b/a Pink Parrot;   )
Glam Nightclub, LLC, d/b/a Bloom Nightclub; )
and 115 Partners, LLC, d/b/a Club One15 ,   )       CASE NO:   CIV-20-1167-SLP
                                             )
      Plaintiffs,                            )
                                             )
            v.                               )
                                             )
J. KEVIN STITT,                              )
                                             )
      Defendant.                             )

## COMPLAINT FOR EMERGENCY DECLARATORY AND INJUNCTIVE RELIEF

COME NOW THE PLAINTIFFS, Friends of Friends, Inc.; Gone Country, LLC, d/b/a/ Cowboy Ranch; East California Corp., d/b/a Michael Murphy's Piano Bar; Pink Parrot Cantina, LLC, d/b/a/ Pink Parrot; Glam Nightclub, LLC, d/b/a/ Bloom Nightclub; and 115 Partners, LLC, d/b/a Club One15, (collectively "Plaintiffs"), seeking emergency relief under the United States Constitution and Oklahoma Constitution. Plaintiffs bring this Complaint for emergency declaratory and injunctive relief against Governor J. Kevin Stitt ("Governor Stitt"), in his official capacity as Governor of the State of Oklahoma. This Complaint challenges Governor Stitt's *Executive Department's Seventh Amended Executive Order 2020-20* issued on November 16, 2020 ("November 16 Order") because it is arbitrary, capricious, unfairly singles out and targets the Plaintiffs' industry, and violates the following clauses of the United States Constitution:

(a)   Commerce Clause and Dormant Commerce Clause of Article I, Section 8, cl. 3 and 42 U.S.C. §1983;

(b)   Equal Protection and Due Process Clause of the Fourteenth Amendment and 42 U.S.C. §1983

(c)     Takings Clause of the United States and Oklahoma Constitutions and 42 U.S.C. §1983

(d)     Violation of the Oklahoma Constitution – Separation of Powers and Non-Delegation Clauses, Okla. Const. art. IV, § 1

## PARTIES

1.     Plaintiff Friends of Friends, Inc., is an Oklahoma corporation with its principal place of business located at 3705 W. Memorial Road, Oklahoma City, Oklahoma County.

2.     Plaintiff Gone Country, LLC, d/b/a/ Cowboy Ranch is an Oklahoma limited liability company with its principal place of business located at 425 Kings of Leon Lane, Oklahoma City, Oklahoma County.

3.     Plaintiff East California Corp., d/b/a Michael Murphy's Piano Bar, is an Oklahoma corporation with its principal place of business located at 119 East California Avenue, Oklahoma City, Oklahoma County.

4.     Plaintiff Pink Parrot Cantina, LLC, d/b/a/ Pink Parrot is an Oklahoma limited liability company with its principal place of business located at 209 Flaming Lips Alley, Oklahoma City, Oklahoma County.

5.     Plaintiff Glam Nightclub, LLC, d/b/a/ Bloom Nightclub is an Oklahoma limited liability company with its principal place of business located at 7 South Mickey Mantle Drive, Oklahoma City, Oklahoma County.

6.     Plaintiff 115 Partners, LLC, d/b/a Club One15 is an Oklahoma limited liability company with its principal place of business located at 115 E. Sheridan Avenue, Oklahoma City, Oklahoma County.

7.     Defendant J. Kevin Stitt is the Governor of the State of Oklahoma. Plaintiffs sue him in his official capacity only.

## JURISDICTION AND VENUE

8.      Plaintiffs seek declaratory and injunctive relief preventing enforcement of the November 16 Order against Plaintiffs and similarly situated parties. The November 16 Order unfairly singles out and targets the bar and nightclub industry, which conducts business primarily from the hours of 11 pm to 2 am.

9.      Plaintiffs bring this lawsuit pursuant to the Civil Rights Act of 1871, 42 U.S.C. §1983, and allege violations of the Equal Protection Act and Due Process Clauses of the Fourteenth Amendment, the Commerce Clause and Dormant Commerce Clause of the United States Constitution, as well as the Separation of Powers and Non-Delegation Clauses of the Oklahoma Constitution. Plaintiffs also bring takings claims under both the United States and Oklahoma Constitutions.

10.     This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343, which confer original jurisdiction on federal district courts to hear suits alleging the violation of rights under the United States Constitution. The Court has supplemental jurisdiction over state law claims under 28 U.S.C. § 1367.

11.     This Court has personal jurisdiction over Defendant because he is an official of, and resides in, the Western District of the State of Oklahoma.

12.     The Court therefore has federal question jurisdiction under Article III of the U.S. Constitution and 28 U.S.C. § 1331.

13.     Plaintiffs seek declaratory relief and a preliminary and permanent injunction against the November 16 Order and similarly crafted orders and rules which may be issued in the future. Accordingly, they bring this action under the Declaratory Judgment Act, 28 U.S.C. §§ 2201– 2202, and the All Writs Act, 28 U.S.C. § 1651.

14.     Plaintiffs also challenge the November 16 Order as exceeding the Governor's authority under the separation-of-powers doctrine enshrined in Okla. Const. art. IV, § 1, the Natural or Man Made Emergency Powers of Governor Act ("Emergency Powers Act"), 63 O.S. §683.9; and the Emergency Management Act, 63 O.S. §683.1. Accordingly, Plaintiffs also invoke the Court's supplemental jurisdiction under 28 U.S.C. § 1367.

15.     Venue in this District is proper under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## BACKGROUND

16.     Since the beginning of the global COVID-19 pandemic, Governor Stitt has issued seven (7) executive orders, and multiple amendments thereto, that - in the name of protecting public health – require material restrictions and cessation of private business for numerous establishments, including restaurants and bars, deemed "non-essential."

17.     On March 15, 2020, Governor Stitt issued *Executive Order 2020-07*, which declared a "state of emergency" based upon eight (8) presumptive diagnoses of coronavirus disease ("COVID-19"), a respiratory illness caused by a virus named the Severe Acute Respiratory Syndrome Coronavirus Two ("SARS-CoV-2" or the "coronavirus").

18.     *Executive Order 2020-07* declared a state of emergency related to COVID-19 under the Oklahoma Emergency Management Act 2003 (the "EMA"). On March 24, 2020, Governor Stitt issued the *Fourth Amended Executive Order 2020-07* which expanded *Executive Order 2020-07* and ordered all businesses not identified as being within a critical infrastructure sector and located in a county experiencing community spread of COVID-19 to close at 11:59 pm on March 25, 2020 and remain closed through April 16, 2020. This Order completely shut down all "non-

4

essential" business in Oklahoma County, such as bars, dine-in restaurants, gyms, and personal care facilities.

19.     On April 1, 2020, Governor Stitt issued the *Seventh Amended Executive Order 2020-07*, extending the closure of "non-essential" businesses through April 30, 2020. On April 22, 2020, the Oklahoma Department of Commerce published its "Open Up and Recover Safely" (OURS) Plan, implementing a three-phase approach to re-opening businesses. On April 24, 2020, Governor Stitt issued the *Fourth Amended Executive Order 2020-13*, providing that all businesses should adhere to the statewide OURS plan. The OURS re-opening plan prohibited bars from opening until Phase 2, beginning May 15, 2020, and then only with diminished standing-room occupancy, where applicable and appropriate, and under social distancing and sanitation protocols.

20.     The Oklahoma Chamber of Commerce provided "*Guidance for Oklahoma's Open Up and Recover Safely Plan: Bars.*"[1] The guidance provides:

### Sanitation & Disinfecting Guidelines

You are encouraged to develop, implement, and maintain and revise a cleaning and disinfecting plan for your bar or nightclub.

### Enhanced Hygiene Considerations

Ensure that access to handwashing/hand sanitizing facilities and supplies are available for employees and patrons.

Encourage employees and patrons to use good hygiene including proper handwashing and observe respiratory etiquette.

Consider messages to remind patrons to prevent the spread of COVID-19. These messages may include suggestions to stay at home if you are sick or do not feel well, and what to do if you're sick or feel ill.

### Social Distancing Guidelines

It is at the discretion of business owners or local officials to determine when and if social distancing measures should be applied.

---

[1] https://www.okcommerce.gov/wp-content/uploads/Bar-Guidance.pdf, *last accessed November 18, 2020*

Bar & nightclub owners should use their best judgement taking into account factors such as location and size of venue when determining the appropriate levels of social distancing and group size.

21.     Plaintiffs barely survived the devastating effects of Governor Stitt's *Fourth Amended Executive Order 2020-07* and the extensions thereof. Bars were completely closed from March 25 through May 15, 2020. Many never re-opened. Those that were able to re-open after the shutdown did so under orders for diminished capacity and sanitation protocols.

22.     When Governor Stitt shut down bars from March 24 through May 15, the federal government initially provided some emergency relief funds. Now, there is no new economic relief package, patronage is down, and Plaintiffs' businesses are struggling to stay open.

23.     Since re-opening on May 15, bars have followed the CDC and OURS guidelines, providing a place for people to gather reasonably safely. Bars offer a highly regulated, sanitized, capacity-limited setting for people to congregate.

24.     While Plaintiffs do not disagree with the need to protect public health, Governor Stitt's most recent action, the November 16 Order, attached here as "Exhibit 1", which closes bars and restaurants offering indoor food and beverages at 11 pm, does not accomplish that goal and is unfairly targeting Plaintiffs' industry, which conducts peak business operations from 11 pm to 2 am.

25.     To stay in business, bars must be afforded the same opportunities other establishments like gyms, salons, casinos, large retail stores, movie theaters, and churches have under the November 16 Order to continue to operate during normal business hours. The bar and

nightclub industry has suffered a critical setback and if the November 16 Order is enacted, it is inevitable that Plaintiffs will be forced to close many of their businesses forever.

26.     While the November 16 Order states that it is designed to prevent person-to-person contact and spread of COVID-19, it fails to consider the health and safety measures already being taken by business owners to mitigate the threat. The November 16 Order does not restrict other businesses from indoor operations with appropriate safety restrictions nor does it offer any reasoned basis for treating restaurants and bars operating *after* 11 pm differently than other businesses.

27.     Plaintiffs will be materially affected by the November 16 Order. Under threat of penalties, including fines, shutting down the business, and suspending licenses, the Plaintiffs are being forced to shutter their business during peak hours of operation in violation of their constitutional rights. At the same time, the Governor continues to permit numerous indoor "non-essential" business activities, provided those business owners adhere to health and safety guidance, principally from the United States Center for Disease Control and Prevention (the "CDC") and from the Oklahoma State Department of Health. Inexplicably, restaurants and bars operating *after* 11 pm are not given that option under the November 16 Order, even though they have continuously and unequivocally demonstrated for several months of operation during the pandemic that they can do so safely.

28.     Plaintiffs have shown themselves highly capable of following the comprehensive protocols that have been in place for several months, and there is no reason indoor food and beverage consumption should be prohibited after 11 pm, especially while the November 16 Order permits other businesses to have clientele indoors and on premises.

29.     There is scant data available in Oklahoma to support a targeted shutdown of bars during the hours of 11 pm to 2 am.  Yet, given the reality of the November 16 Order, many bars are now likely to close at least temporarily and thousands of employees are likely to be laid off from bars over the holiday season - with no federal funds and an exhausted Unemployment Compensation Trust Fund.

30.     Governor Stitt's decision to shut down bars during their peak hours of 11 pm to 2 am, the second shut down of this year - this time with no safety net of federal stimulus dollars to soften the blow - will absolutely lead to a catastrophic economic fallout. Many restaurants and bars have already closed their doors permanently due to the COVID-19 shutdown, and if the prohibition on operating a bar after 11 pm is prolonged, countless more bars and nightclubs are likely to permanently close by spring 2021. Plainly, the human toll on bar and nightclub owners, their employees, and the entire bar service supply chain will be dramatically worse than what Governor Stitt is attempting to mitigate through the November 16 Order. In fact, closing the bar and indoor dining industry after 11 pm in Oklahoma will affect Oklahoma's broader economy. Nationwide, more than 100,000 restaurants - or 1 in 6 restaurants - have closed permanently or long-term because of the pandemic.[2]

31.     The Governor stated in a press conference that the rationale behind the closure of bars and restaurants at 11 pm is because "data shows that social distancing is harder to maintain as it gets later at night, especially in bars."[3] However, Governor Stitt has also continually refused to enact a statewide mask mandate, which is highly recommended by the Center for Disease

---

[2] https://www.travelandleisure.com/food-drink/coronavirus-pandemic-restaurant-shutdowns, last accessed November 17, 2020

[3] https://www.stamfordadvocate.com/news/article/Stitt-puts-new-restrictions-on-bars-restaurants-15731328.php, last accessed November 17, 2020

Control ("CDC") and enacted in 34 other states. The CDC website states "CDC recommends that people wear masks in public settings, like on public and mass transportation, at events and gatherings, and anywhere they will be around other people. Masks may help prevent people who have COVID-19 from spreading the virus to others."[4]

32.     This indiscriminate ban on Plaintiffs' bar industry to operate after 11 pm, given their demonstrated ability and willingness to implement health and safety procedures that will keep their employees and guests reasonably safe, is not rationally related to stopping the spread of COVID-19.

33.     The impact of the November 16 Order is devastating to the entire food industry supply chain and to all Oklahomans who rely on Plaintiffs' businesses and the bar and restaurant industry for their livelihoods, entertainment, and sustenance.

34.     There is nominal, if any, public health benefit from the November 16 Order as applied to bars and indoor dining establishments after 11 pm. It is indisputable that the indoor consumption of food and beverages can be done safely and at least as safely as indoor salon services, casinos, theaters, football games, amusement park, gyms, and large, crowded retail stores. In fact, despite ever-present COVID-19 concerns, indoor consumption of food and beverages at bars and restaurants is still permitted *until* 11 pm.

35.     Accordingly, Plaintiffs seek an emergency preliminary injunction of the November 16 Order. They also seek a permanent injunction protecting their interests, together with costs and actual attorney fees.

---

[4] https://www.cdc.gov/coronavirus/2019-ncov/daily-life-coping/personal-social-activities.html, last accessed November 17, 2020

## CAUSES OF ACTION

**COUNT I - Violation of the Commerce Clause and Dormant Commerce Clause,
U.S. Const. Art. I, Sec. 8, cl. 3, and 42 U.S.C. § 1983**

36.     Plaintiffs incorporate by reference the allegations in all preceding paragraphs of this Complaint.

37.     "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State … subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." 42 U.S.C. § 1983.

38.     The Commerce Clause of the U.S. Constitution grants Congress the power "[t]o regulate commerce with foreign Nations, among the several States, and with the Indian Tribes." U.S. Const. art. I, § 8, cl. 3.

39.     In its dormant state, often called the Dormant Commerce Clause, the Commerce Clause precludes States from enacting legislation that discriminates against or impermissibly burdens interstate commerce. State laws that facially discriminate against interstate commerce are invalid *per se* under the Commerce Clause. This is true also of State laws that are facially neutral if they impermissibly burden interstate commerce in practice. *West Lynn Creamery* v. *Healy*, 512 U.S. 186, 194–195 (1994).

40.     Although the Dormant Commerce Clause is usually invoked to challenge protectionist laws that favor in-state businesses over out-of-state businesses, the Clause has a broader function: to guarantee for all citizens the right to access and participate in interstate commerce. Just as no State can prevent out-of-staters from engaging in commerce with its residents, no State may prevent its residents from participating in commerce with those located in another State.

41.     The November 16 Order impermissibly restricts Plaintiffs from exercising the right to engage in interstate commerce.

42.     The Commerce Clause of the United States Constitution reserves the power to regulate interstate and foreign commerce to Congress.

43.     Because these powers are reserved to Congress, individual states may not unduly burden interstate commerce, including excessively burdening commerce in Oklahoma and favoring commerce in other states.

44.     The November 16 Order imposes a burden on interstate commerce and on Plaintiffs that is clearly excessive in relation to the putative benefits. Plaintiffs' businesses impact the flow of interstate commerce since many of their customers will head to neighboring states where bars and restaurants remain open after 11 pm. Furthermore, the November 16 Order impermissibly burdens the entire food industry supply chain - both suppliers within Oklahoma and suppliers to Oklahoma.

45.     Since Plaintiffs stand ready to provide indoor food and beverage consumption under established health and safety guidelines while respecting social distancing, and have proven their ability to do so, there is nominal or no public benefit to preventing Plaintiffs from providing these services. Conversely, the November 16 Order singles out and incapacitates these businesses, causing job loss, loss of business revenue, and inevitably bankruptcy and permanent closure of valuable Oklahoma businesses. The November 16 Order also encourages interstate travel to neighboring states where bars and restaurants are open past 11 pm. Encouraging travel during a time of pandemic is at cross purposes to the Governor's stated reasons for issuing the November 16 Order.

46.     The November 16 Order impermissibly burdens in-state commerce to the benefit of commerce in neighboring states by forcing Plaintiffs' customers to go out of state for indoor, on premises nightlife and entertainment after 11 pm. The November 16 Order also

burdens interstate commerce by burdening the entire food service industry supply chain within and to Oklahoma.

47.    Accordingly, the November 16 Order is an unconstitutional regulation of and interference with interstate commerce and/or an undue burden on in-state commerce in violation of the Dormant Commerce Clause of the United States Constitution.

**COUNT II - Violation of the 14th Amendment's Due Process Clause and 42 U.S.C. §1983**

48.    Plaintiffs incorporate by reference the allegations in all preceding paragraphs of this Complaint.

49.    The Due Process Clause of the Fourteenth Amendment to the U.S. Constitution provides that no State can "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1, cl. 3.

50.    "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State … subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." 42 U.S.C. § 1983.

51.    The procedural component of the Due Process Clause prohibits government from depriving Plaintiffs of liberty and property interests without providing any process before or after the deprivations occurred.

52.    To establish a procedural due process claim under 42 U.S.C. § 1983, a plaintiff must show that (1) it had a life, liberty, or property interest protected by the Due Process Clause; (2) it was deprived of this protected interest; and (3) the state did not afford it adequate procedural rights. *Camuglia v. The City of Albuquerque*, 448 F.3d 1214, 1219 (10th Cir. 2006).

53.     Plaintiffs have a protected liberty interest in the right to live without arbitrary governmental interference with their liberty and property interests. *County of Sacramento* v. *Lewis*, 523 U.S. 833, 845 (1988).

54.     Liberty "denotes not merely freedom from bodily restraint ***but also the right of the individual to contract, to engage in any of the common occupations of life***, to acquire useful knowledge, to marry, establish a home and bring up children, to worship God according to the dictates of his own conscience, ***and generally to enjoy those privileges long recognized . . . as essential to the orderly pursuit of happiness by free men***." *Board of Regents of State Colleges* v. *Roth*, 408 U.S. 564, 572 (1972) (emphases added).

55.     Plaintiffs have protected liberty and property interests, which Defendant infringed through the November 16 Order.

56.     Plaintiffs have a right to operate their businesses, with reasonable restrictions rationally related to the public health, and to do so without being treated unequally by the government.

57.     The November 16 Order is neither neutral nor generally applicable and singles out restaurants and bars operating after 11 pm while permitting many crowded businesses and activities to continue operating with no rational basis for those exceptions. This order, as applied to Plaintiffs, is not rationally related to the State's goal of preventing the spread of COVID-19.

58.     Governor Stitt failed to provide any procedural due process before issuing the *Seventh Amended Executive Order 2020-20*, nor does the *Executive Order* provide any mechanism for post-deprivation review.

59.     Governor Stitt acted under color of State law in an official capacity and within the scope of his official duties when issuing the Executive Order.

13

60.     As a direct and proximate cause of the failure to provide any pre- or post-deprivation process, Plaintiffs suffered prejudice under threat of criminal and civil sanctions, including fines, shutting down their business, and license revocation.

61.     The past Executive Orders and guidance from the Chamber of Commerce acknowledge that so-called "non-essential" businesses can safely operate by adhering to the OURS guidelines.

62.     Plaintiffs can operate in full compliance with these rules.

63.     By failing to provide any pre- or post-deprivation review of the orders and rules shuttering their businesses, Plaintiffs are suffering substantial losses of liberty and property.

64.     Plaintiffs have no adequate remedy at law for this threatened violation of their constitutional rights.

65.     The substantive component of the Due Process Clause prohibits government from taking action that "shocks the conscience" or "interferes with rights implicit in the concept of ordered liberty." *United States v. Salerno*, 481 U.S. 739, 746 (1987).

66.     Plaintiffs have a protected liberty interest in the right to live without arbitrary governmental interference with their liberty and property interests. *County of Sacramento v. Lewis*, 523 U.S. 833, 845 (1988).

67.     Liberty "denotes not merely freedom from bodily restraint but also the right of the individual to contract, to engage in any of the common occupations of life, to acquire useful knowledge, to marry, establish a home and bring up children, to worship God according to the dictates of his own conscience, and generally to enjoy those privileges long recognized . . . as essential to the orderly pursuit of happiness by free men." *Board of Regents of State Colleges* v. *Roth*, 408 U.S. 564, 572 (1972) (emphasis added).

68.     The November 16 Order shocks the conscience and interferes with Plaintiffs' deeply-rooted liberty and property rights, including the right to work, right to contract, and right to engage in commerce, for all of the reasons described in the General Allegations and in each of the Counts of this Complaint, which are incorporated into this Paragraph by reference.

69.     Each Plaintiff could and can conduct business in full compliance with all of the rules imposed on businesses allowed to operate under the Executive Orders, or reasonably equivalent and equally safe measures tailored to the unique nature of the in-person operations. Thus, the November 16 Order is not narrowly tailored to achieve a compelling governmental interest.

70.     Nor is there any rational basis to deprive Plaintiffs of their liberty and property interests in performing services for willing customers when they can do so safely and in the same (or reasonably safe equivalent) manner as other businesses are allowed to operate.

71.     In the alternative, the November 16 Order is not reasonably related to a legitimate governmental interest.

72.     Plaintiffs seek a declaration that the November 16 Order violates the substantive component of the Due Process Clause, and an injunction against further infringements of their rights under this Clause as described in the Prayer for Relief.

**COUNT III - Violation of the Takings Clauses of the U.S. & Oklahoma Constitutions and 42 U.S.C. § 1983 (Individual Plaintiffs)**

73.     Plaintiffs incorporate by reference the allegations in all preceding paragraphs of this Complaint.

74.     Defendants have seized without appropriate compensation Plaintiffs' real and personal property by forcing material limitations on their businesses.

75.     These uncompensated seizures violate the Takings Clause of the Fifth Amendment, made applicable to States through the Fourteenth Amendment, and Okla. Const. art. II, § 24.

76.     The November 16 Order represents a taking of Plaintiffs' property for a public purpose, as the taking is one the Defendant has justified as protecting Oklahoma's public health, safety, and welfare.

77.     Defendant has placed the cost of any public benefit of the November 16 Order on the shoulders of private businesses like Plaintiffs' and have failed to offer appropriate compensation for these takings.

78.     The November 16 Order materially and substantially jeopardizes the sustainability of Plaintiffs' businesses and Plaintiffs' rights to property ownership.

79.     The U.S. and Oklahoma Takings Clauses do not prohibit the government's authority to interfere with private property, but they do require the government to pay adequate compensation for a taking.

80.     The Takings Clauses apply to permanent as well as temporary interference with private use of personal and real property.

81.     As a result of the November 16 Order, Plaintiffs, and those similarly situated, will at least temporarily lose the economically beneficial use of their real and personal property.

82.     The November 16 Order effects an unconstitutional taking without just compensation.

**COUNT IV - Violation of the Oklahoma Constitution –**
**Separation of Powers and Non- Delegation Clauses**

83.     Plaintiffs incorporate by reference the allegations in all preceding paragraphs of this Complaint.

84.     The November 16 Order is unconstitutional and unenforceable against Plaintiffs because it rests on impermissible delegations of legislative authority to the Executive Branch, a violation of the Oklahoma Constitution.

85.     The Separation of Powers Clause in the Oklahoma Constitution provides, "The powers of the government of the State of Oklahoma shall be divided into three separate departments: The Legislative, Executive, and Judicial; and except as provided in this Constitution, the Legislative, Executive, and Judicial departments of government shall be separate and distinct, and neither shall exercise the powers properly belonging to either of the others. Okla. Const. art. IV, § 1.

86.     The legislative power in the State of Oklahoma is explicitly vested in the Oklahoma Legislature. Id. art. IV, Section 1.

87.     The Oklahoma Constitution grants emergency powers to the government to act during times of a catastrophic health emergency, 63 O.S. §6102. The exercise of these powers must: (1) promote the public good; (2) be grounded in a thorough scientific understanding of public health threats and disease transmission; (3) be guided by principles of justice and anti-discrimination, (3) enacted with fairness and  tolerance towards individuals and groups during catastrophic health emergencies; and (4) must ensure that the rights of people to liberty, bodily integrity, and privacy be respected to the fullest extent possible consistent with maintaining and preserving the health and security of the public during a catastrophic health emergency. 63 O.S. §6102(6-9).

88.     The Emergency Powers Act allows the government to "provide, during a catastrophic health emergency, state and local officials with the ability to prevent, detect, manage, and contain health threats *without unduly interfering with civil rights and liberties*." Emphasis added. 63 O.S. §6103(6).

89.     When issuing its COVID-19 emergency orders, including the November 16 Order, Governor Stitt impermissibly and unconstitutionally infringed on legislative authority. The executive branch may not establish a regulatory scheme in a total absence of authority.

90.     The capricious, sporadic, and selective regulations in the November 16 Order - regulations that irrationally single out restaurants and bars operating after 11 pm,  while permitting other non-essential businesses to offer indoor services - are not based in science and lack any imaginable rational basis for the total closure of indoor food and beverage consumption in restaurants after 11 pm . The November 16 Order cites no data to support singling out restaurants and bars operating after 11 pm.  The closure of restaurants and bars for indoor consumption of food and beverages while many other businesses remain open for indoor services is arbitrary, capricious, and not in any conceivable way rationally related to any public health goals. The November 16 Order may well contribute to the increased spread of COVID-19 by encouraging large, in person, in home gatherings.

91.     The November 16 Order thus exceeds the authority granted to Governor Stitt by promulgating an impermissible regulatory scheme that selectively and onerously punishes restaurants and bars operating after 11 pm while allowing other businesses to operate.

### REQUEST FOR RELIEF

WHEREFORE, Plaintiffs respectfully requests that this Court:

(1) Grant immediately an emergency, preliminary injunction that authorizes Plaintiffs to provide indoor, on-premises food and beverage consumption in accord with appropriate health and safety protocols at all hours of normal operations;

(2) Enjoin Governor Stitt from enforcing the November 16 Order and from issuing any future orders or rules similar to the ones described in this action;

(3) After the claims are fully adjudicated, declare the November 16 Order unconstitutional as applied, and permanently enjoin its enforcement against Plaintiffs and others similarly situated;

(4) After the claims are fully adjudicated, declare the November 16 Order an unconstitutional taking under the U.S. and Oklahoma Constitutions and compensate Plaintiffs accordingly;

(5) Pursuant to 42 U.S.C. § 1988, enter an award of reasonable attorney fees and costs in favor of Plaintiffs; and

(6) Grant such other and further relief as the Court deems just and proper.

Dated: November 18, 2020

Respectfully submitted,

/s/Jacquelyn L. Dill
Jacquelyn L. Dill, OBA #19955
The Dill Law Firm, P.C.
4801 Gaillardia Parkway, Suite 150
Oklahoma City, Oklahoma  73142
Telephone:    (405) 253-6444
Facsimile:    (405) 256-6445
**Attorney for Plaintiffs**

## VERIFICATION

STATE OF OKLAHOMA                )
                                 ) ss:
COUNTY OF OKLAHOMA               )


       I, Jeff Rogers, of lawful age, sound mind, and duly sworn upon my oath hereby declare as follows:

1. I am the managing member of Plaintiffs Friends of Friends, Inc.; Gone Country, LLC,d/b/a Cowboy Ranch; East California Corp., Pink Parrot Cantina, LLC, d/b/a Pink Parrot; and Glam Nightclub, LLC, d/b/a Bloom Nightclub.

2. I am knowledgeable about the food and bar service industry in Oklahoma and the devastating impact of the government's COVID-19 emergency orders on the industry.

3. I have read the foregoing Verified Complaint for Declaratory and Injunctive Relief, and, based upon my personal knowledge of the facts stated therein, the facts stated in the Verified Complaint are true to the best of my knowledge and belief.

4. If called upon to testify, I would competently testify as to the matters stated herein.

5. Accordingly, pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

       Dated: November 18, 2020.

                            _____
                            Jeff Rogers

       Subscribed and sworn to before me this 18th day of November, 20.

My Commission Expires:                          _____

_____                        Notary Public